1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

J.M.,

Case No. 22-cv-06105-DMR

8

Plaintiff,

9

v.

**ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT**

10

MILLER CREEK SCHOOL DISTRICT, et
al.,

Re: Dkt. No. 25

11
12

Defendants.

13

Plaintiff J.M., a student, filed this lawsuit through his mother, S.M.L., in connection with

14

the July 21, 2022 and September 6, 2022 administrative decisions of the California Office of

15

Administrative Hearings ("OAH").[1]  The operative complaint 1) seeks declaratory judgment with

16

respect to California Education Code § 56366 (first claim), 2) appeals two adverse administrative

17

hearing decisions pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.

18

§ 1400 *et seq.* (second and third claims), and 3) alleges state law claims for negligence and breach

19

of contract (fourth and fifth claims).  Plaintiff brings claims one through three solely against

20

Defendant Miller Creek School District (the "District").  He asserts the fourth and fifth claims

21

against the District as well as Anova Education and Behavior Consultation, Inc. doing business as

22

Anova Center for Education ("Anova").

23

On January 18, 2023, in response to the parties' joint request, the court agreed to

24

adjudicate the IDEA appeal first.  At the initial case management conference, the parties

25

represented that Education Code § 56366(a)(4) was part and parcel of Plaintiff's claims under the

26

27

[1] On August 4, 2023, in response to Plaintiff's motion to substitute one of two individuals as
guardian ad litem in this case, the court appointed J.M.'s father, P.M., as guardian ad litem for
J.M.  [Docket No. 43.]

28

1    IDEA.  Relying on that representation, the court agreed to allow the parties to present the

2    Education Code issue as part of the IDEA appeal.  [Docket No. 24 (1/18/2023 Minute Order).]

3         Plaintiff now moves for partial summary judgment, arguing that the OAH decisions should

4    be reversed.  [Docket Nos. 25, 29.]  Plaintiff's motion is not a model of clarity.  In light of the

5    1/18/2023 Minute Order, the court infers that Plaintiff is moving on his second and third claims

6    (the IDEA appeal of two administrative decisions), and on his first claim for declaratory relief

7    with respect to Education Code § 56366.  The District filed an opposition brief.[2]  [Docket No. 28.]

8    Plaintiff filed a reply.  [Docket No. 29.]

9         The District did not separately move for summary judgment.  At the hearing, the parties

10   agreed that if the court denies summary judgment to Plaintiff on the IDEA claims, it may enter

11   summary judgment in favor of the District on those claims.  *See Capistrano Unified Sch. Dist. v.*

12   *Wartenberg By & Through Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) ("[t]hough the parties

13   may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from

14   the district court's case management clerk, the procedure is, in substance, an appeal from an

15   administrative determination, not a summary judgment.").

16        Having considered the briefs, oral argument, and the administrative record, the court

17   denies Plaintiff's motion and grants summary judgment in favor of the District on the IDEA

18   claims.  As further explained below, the court does not reach Plaintiff's first claim for declaratory

19   relief because contrary to the parties' representation, the legal issue involving the interpretation

20   and validity of Education Code § 56366 is separate from rather than intertwined with the IDEA

21   appeal.  Plaintiff's claim for declaratory relief regarding the Education Code, as well as his claims

22   for negligence and breach of contract, all arise under state law.  The court now resolves the federal

23   claims under the IDEA over which it has original jurisdiction and declines to exercise

24   supplemental jurisdiction over the remaining state law claims.

25

26

27   ───────────────────

[2] Anova also filed an "opposition" brief to clarify that Plaintiff's motion for summary judgment
only pertains to his first, second, and third claims, to which Anova is not a party.  [Docket No. 27
28   at 2.]  Plaintiff does not respond to Anova's filing.  The court agrees that Anova is not a party to
this motion.

United States District Court
Northern District of California

1

## I.    BACKGROUND

The following factual and procedural background information comes from the findings of

fact made by Administrative Law Judge ("ALJ") Brian H. Krikorian in the underlying

administrative proceedings (Docket No. 26 at 430-438 ("Expedited OAH Decision"), 983-992

("Non-Expedited OAH Decision")) and the corresponding Administrative Record ("A.R."), which

was filed under seal.  [Docket No. 26.]

### A.    Factual Background

J.M. was eleven years old and in fifth grade at the time of the administrative hearings in

this matter.  A.R. at 428.  He resided in the District and was eligible for special education services

under the qualifying categories of autism and speech and language impairment.  *Id.*  The District

first placed J.M. at Anova in 2018 pursuant to an Individualized Education Plan ("IEP").  *Id.*  As a

non-public school ("NPS"), Anova is a private institution certified by the State of California to

provide special education and related services to students.  *Id.* at 557-58.  Anova accepts student-

referrals from private schools as well as public-school districts.  *Id.*

During the relevant time frame, the relationship between the District and Anova was

governed by a master contract.  A.R. at 300-48, 771-818.  The master contract includes an

individual services agreement ("ISA") developed for each student for whom Anova provides

special education and related services.  *Id.* at 309 (Section 8 "Individual Services Agreement").

The master contract also includes a termination clause, which states:

> This Master Contract may be terminated with or without cause by
> either [Anova] or [the District]. To terminate the Master Contract
> either party shall give twenty (20) calendar days prior written notice
> (California Education Code Section 56366(a)(4)). At the time of
> termination, [Anova] shall provide to [the District] any and all
> documents [Anova] is required to maintain under this Master
> Contract.  ISAs are void upon termination of this Master Contract, as
> provided in Section 5 or 6. [Anova] or [the District] may terminate an
> ISA for cause. To terminate the ISA, either party shall give twenty
> (20) calendar days prior written notice (refer to Section 7).

> In the event of the closure of a non-public school or agency, the
> [District] will be given as much notice as is reasonably possible.

A.R. 311-12, 782.

In mid-March 2020, J.M. began receiving educational services from Anova virtually rather

than in-person.  A.R. 429.  At a June 22, 2021 meeting regarding Plaintiff's IEP, Heidi Adler, the Director of Anova, shared Anova's intention to return to in-person instruction in the 2021-2022 school year.  *Id.* at 382, 844; *see also id.* at 429.  J.M.'s mother, S.M.L., was concerned about J.M. returning to school, and discussed other options with the IEP team in June 2021, including disenrollment from the District and participation in home or virtual learning.  *Id.*  J.M. did not return to in-person instruction at Anova in Fall 2021.  *Id.*  Instead, Anova provided him with five hours of home instruction and related services online.  *Id.* at 580.  At a December 2021 IEP meeting, S.M.L. informed the team that she believed J.M. would transition back to in-person learning at Anova in February 2022.  *Id.* at 429, 581.

Around the same time, Anova staff began exchanging emails regarding J.M.'s behavior. *See* A.R. at 618, 243-750.  For example, on December 16, 2021, J.M.'s occupational therapist reported an incident during a virtual session in which J.M. was throwing a tantrum and cussing; she also informed staff that swearing occurred between J.M. and S.M.L.  *Id.* at 429.  On January 3, 2022, January 11, 2022, and January 25, 2022, staff again expressed their concern regarding J.M.'s behavior.  *Id.*; *see also id.* at 244-45, 751-52.  These emails were exchanged between Adler and Phillipa Rosenblatt, the District's Superintendent at the time.  *Id.*

On February 2, 2022, Adler emailed Rosenblatt asking if Anova should provide the District with a 20-day notice of termination of the ISA.  A.R. at 249, 756.  In response, Rosenblatt stated that if Anova felt strongly that it wanted to issue a 20-day notice, it should do so along with a request to hold an IEP meeting.  *Id.*  Adler then responded that Anova "feels strongly" that J.M. "shouldn't come back to campus."  *Id.* at 250, 757.

The same day, Rosenblatt emailed S.M.L. stating that Anova "feels strongly that [J.M.] needs another placement and will be sending us a letter ending [J.M.'s] enrollment at Anova." A.R. at 250, 757.  In this email, Rosenblatt informed S.M.L. that Irene M. Hunt School was an alternative NPS option for J.M.  *Id.*  On February 4, 2022, Anova provided a 20-day notice to the District explaining that it would be terminating its contract for J.M.'s placement, with the last day of service to take place on February 25, 2022.  *Id.* at 262, 414.

On February 13, 2022, Plaintiff's counsel emailed Rosenblatt, stating that S.M.L. would

United States District Court
Northern District of California

"defer" on other placement options – including Irene M. Hunt School – until the District was able to provide counsel with a satisfactory "opinion on the legality of Anova's terminating option." A.R. at 923.  On February 14, 2023, Rosenblatt explained that the 20-day notice was not an expulsion and reiterated that the District had secured an alternative NPS placement for J.M. at Irene M. Hunt School.  *Id.* at 924.

In parallel, on February 8, 2022, a representative of the Marin County Self Education Local Plan Area ("SELPA") reached out to S.M.L. requesting that an IEP meeting be held on February 16, 2022.  A.R. at 1086-87.  Plaintiff's counsel responded that S.M.L. would not attend any IEP meeting until the District provided a satisfactory answer to counsel's questions.  *Id.* at 927.  The IEP team convened a month later, on March 16, 2022.  *Id.* at 989, 1089.  S.M.L. stated that she had "no confidence" in NPS schools and wanted to explore a more comprehensive school setting.  *Id.* at 968.  Although the team discussed the possibility of enrolling J.M. in a county-operated program, Marin County Office of Education ultimately did not offer J.M. a placement.  *Id.* at 1094, 1101.  A subsequent IEP meeting was held on May 27, 2022, where Plaintiff's counsel voiced his concerns that J.M. was not receiving the same due process rights as students in a public-school setting.  *Id.* at 985.  J.M.'s IEP placement continues to be an NPS under contract with the District or SELPA.  *Id.* at 1101.

### B.    Administrative Proceedings

Prior to requesting a due process hearing with OAH, J.M. filed two compliance complaints with the California Department of Education ("CDE") – one against the District and the other against Anova.  A.R. at 95-98, 99-102.  The CDE found that the District complied with IEP process requirements under the IDEA after Anova terminated J.M.'s enrollment.  *Id.* at 97. Likewise, the CDE concluded that Anova complied with California law, specifically Education Code §§ 56366(a)(4) and 56366.10, when it informed the District that it could no longer serve J.M. with 20 days' notice.  *Id.* at 101.

On June 13, 2022, J.M. filed a request for a due process hearing with OAH.  A.R. at 1. OAH scheduled the matter for expedited and non-expedited hearings.  *Id.* at 33.  The first hearing was held on July 12, 2022 and addressed whether the District violated Title 20 of the United States

1   Code, section 1415(k), when J.M.'s enrollment at Anova was terminated on February 2, 2022.  *Id.*

2   at 426.

3         Subdivision (1)(E) of section 1415(k) provides that within 10 school days of "any decision

4   to change the placement of a child with a disability because of a violation of a code of student

5   conduct," a local educational agency[3] ("LEA") like the District must hold a meeting with relevant

6   IEP team members to determine if that conduct was a manifestation of the child's disability.  An

7   LEA may not discipline a child for behavior that the LEA finds is a manifestation of the student's

8   disability and must, absent specific circumstances, return the child to his or her last educational

9   setting.  20 U.S.C. § 1415(k).

10        The ALJ held that section 1415(k) was not triggered in this case, and therefore was not

11  violated by the District, because neither the District nor Anova expelled or suspended J.M. for

12  disciplinary reasons.  *Id.* at 432.  The ALJ relied on Adler's testimony, which explained that

13  Anova's decision to terminate the master contract was not related to J.M.'s outbursts, Anova was

14  more concerned that J.M. would not physically return to the program in February as promised, and

15  Anova was no longer meeting J.M.'s needs due to his age and virtual attendance.  *Id.*  The ALJ

16  stated that J.M. "offered no credible evidence that contradicted Adler's opinions."  *Id.*  In addition,

17  the ALJ concluded that the District did not violate section 1415(k) because J.M. was not "deprived

18  of educational services during the 20-day notice period."  *Id.* at 432.  Rather, "[a]ny delays in

19  having [J.M.] return to a school placement were not caused by Anova's termination notice."  *Id.* at

20  433.

21        The non-expedited hearing was held on August 16, 2022 and asked whether the District

22  denied J.M. a free and appropriate public education ("FAPE") by removing him from Anova

23  without his parent's permission and without an IEP meeting prior to the change of placement.

24  _____

25  [3] A local educational agency is "almost always the same, for practical purposes, as a school
    district."  *Emma C. v. Torlakson*, 621 F. Supp. 3d 982, 987 n.1 (N.D. Cal. 2018); *see also* 20
26  U.S.C. § 7801(30)(A) ("The term 'local educational agency' means a public board of education or
    other public authority legally constituted within a State for either administrative control or
27  direction of, or to perform a service function for, public elementary schools or secondary schools
    in a city, county, township, school district, or other political subdivision of a State, or of or for a
28  combination of school districts or counties that is recognized in a State as an administrative
    agency for its public elementary schools or secondary schools.").

United States District Court
Northern District of California

A.R. at 979.  On September 6, 2022, the ALJ concluded that the District met its obligation under the IDEA and did not deny J.M. a FAPE.  The ALJ held that Anova complied with California law when it sent its 20-day termination notice, and the District properly convened an IEP and made a new placement offer within the 20-day window.  *Id.* at 991.  The ALJ explained that neither J.M. nor the District "had any control over [Anova's] termination."  A.R. 986.  Once the District received notice of the termination, it "acted swiftly to find a suitable replacement, and offered an immediate IEP meeting to discuss the options."  *Id.*  This evidence, the ALJ concluded, established that the District met its obligations under the IDEA and did not deny J.M. a FAPE.  *Id.*

### C.    Civil Proceedings

Plaintiff filed the present action on October 17, 2022.  He filed an amended complaint on November 1, 2022, seeking declaratory judgment in connection with Education Code § 56366 (first claim), appealing two adverse administrative hearing decisions pursuant to the IDEA (second and third claims), and alleging state law claims for negligence and breach of contract against the District and Anova respectively (fourth and fifth claims).  Plaintiff now moves for partial summary judgment against the District on his first, second, and third claims.

Plaintiff's Rule 56 motion fails to establish any connection between the statutory analysis of Education Code § 56366 and this court's review of the OAH decisions under the IDEA.  At the October 12, 2023 hearing, Plaintiff's counsel attempted to clarify the relationship between these claims.  As the court now understands it, Plaintiff argues that the ALJ abused his discretion by deciding that he could not rule on the constitutionality or statutory interpretation of section 56366 as part of the OAH proceedings.  According to Plaintiff, if the court finds that the ALJ abused his discretion in this way, it should "refer" the Education Code issue to state court for determination.[4] The court will analyze Plaintiff's appeal of the adverse OAH decisions under the IDEA; it will consider section 56366 only insofar as it is connected to Plaintiff's request that the court review the ALJ's decision not to adjudicate the constitutionality or legality of that statute.

---

[4] Plaintiff did not explain how the court can "refer" the Education Code issue to a state court.  In any event, the court declines supplemental jurisdiction over the state law claims, including the interpretation and constitutionality of Education Code § 56366, which means that Plaintiff is free to pursue those claims in state court if he chooses to do so.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.    STANDARD OF REVIEW

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). Congress enacted the IDEA "to assist state and local agencies financially in educating students with disabilities." *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 642 (9th Cir. 2005). Congress stated the goal of the IDEA as follows:

> to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]

20 U.S.C. § 1400(d)(1)(A). To that end, the IDEA contains numerous procedural safeguards, including parental notification requirements and complaint procedures "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. §§ 1415(b)(3), 1415(b)(6)(A). After filing a complaint, a child's parents are entitled to "an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A). "In California, the hearing is 'conducted by a person knowledgeable in the laws governing special education and administrative hearings[.]'" *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993) (citing Cal. Educ. Code § 56505(c)). Any party may appeal the result in a civil action in state or federal court. *Id.*

In a civil action seeking review of an administrative decision, the IDEA provides that a court "shall receive the records of the administrative proceedings; . . . shall hear additional evidence at the request of a party; and . . . basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai*, 4 F.3d at 1471 (citations omitted). However, complete de novo review is inappropriate. "Because Congress intended states to have the primary responsibility of formulating each individual child's education, [courts] must defer to

their 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies." *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1126 (9th Cir. 2003), *superseded by statute in non-relevant part*, *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634 (9th Cir. 2005). "How *much* deference to give state educational agencies, however, is a matter for the discretion of the courts[.]" *Ojai*, 4 F.3d at 1472 (emphasis in original) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). The party seeking relief bears the burden of demonstrating that the ALJ's decision should be reversed. *J.W. v. Fresno Unified Sch. Dist.*, 626 F. 3d 431, 438 (9th Cir. 2010).

## III.   DISCUSSION

While Plaintiff's motion for partial summary judgment purports to appeal the expedited and non-expedited OAH decisions, his brief fails to raise any direct challenge to those decisions. Plaintiff does not argue that section 1415(k) was triggered by the termination of the ISA, nor does he argue that the District denied him a FAPE under the IDEA. Instead, Plaintiff appears to raise a separate issue – whether Anova properly terminated the ISA under Education Code § 56366(a)(4). Mot. at 10. Plaintiff's motion does not explain section 56366(a)(4)'s connection to the OAH decisions or its relevance to the District's obligations to J.M. under the IDEA. As the court now understands it from statements made by Plaintiff's counsel at oral argument, Plaintiff argues that the ALJ erred by electing not to exercise jurisdiction over Plaintiff's request to review the constitutionality or statutory interpretation of Education Code § 56366(a)(4).

### A.   The Expedited Decision

As set forth above, the expedited hearing addressed Plaintiff's claim that the District should have followed the procedures set forth in 20 U.S.C. § 1415(k) upon Anova's termination of J.M.'s ISA with the District. The ALJ held that section 1415(k) did not apply to the termination of J.M.'s enrollment because J.M. was not disciplined; rather, Anova sent a 20-day written notice terminating the ISA with the District, with the last day of service to be February 25, 2022. A.R. 435. The ALJ found that "[t]he contract termination had nothing to do with [J.M.] violating a school code of conduct, but instead reflected Anova's inability to continue serving his needs." *Id.* Plaintiff's opening brief makes no mention of section 1415(k). As previously stated,

United States District Court
Northern District of California

1    Plaintiff instead insists that the termination of J.M.'s enrollment violated Education Code § 56366.

2    Plaintiff's position assumes that the District somehow bears responsibility for Anova's decision to

3    terminate J.M.'s enrollment.  Plaintiff provides no factual or legal support for this leap in logic.

4    Plaintiff also repeatedly characterizes J.M.'s termination as an "expulsion" without legal or factual

5    support.[5]  In response to Plaintiff's failure to raise any direct challenge to the expedited decision,

6    the District argues that his claim is waived.  Opp'n at 10 (citing *Rattlesnake Coal. v. U.S. E.P.A.*,

7    509 F.3d 1095, 1100 (9th Cir. 2007)).  Plaintiff does not respond to the District's waiver

8    argument, thereby conceding the point.

9         Plaintiff's new argument put forward at the October 12, 2023 hearing fares no better.

10   Plaintiff contends that ALJ Krikorian erred by failing to review the constitutionality or statutory

11   interpretation of Education Code § 56366(a)(4) during the expedited proceeding.  On July 1, 2022,

12   the parties held a prehearing conference by video before ALJ Christine Arden.  A.R. 441-499.

13   During the conference, ALJ Arden developed the issue to be presented at the underlying expedited

14   hearing: "Did Miller Creek violate Title 20 of the United States Code, section 1415(k), when

15   J.M.'s enrollment at Anova was terminated on February 2, 2022?"  A.R. 447.  In so doing, ALJ

16   Arden noted that "all expedited hearings before the Office of Administrative Hearings under the

17   IDEA are under 20 U.S.C. section 1415(k)."  *Id.* (cleaned up).

18        The problem with Plaintiff's new argument is that his counsel agreed with ALJ Arden's

19   framing of the issue.  *Id.* at 448-49.  As a result, ALJ Krikorian exclusively ruled on whether

20   Miller Creek violated 20 U.S.C. §1415(k).  A.R. 433.  Plaintiff does not offer any statute,

21   regulation or case giving ALJ Krikorian the authority to modify the issue Plaintiff himself agreed

22   to.  Moreover, Plaintiff provides no authority giving ALJ Krikorian the ability to consider

23   questions outside the realm of 20 U.S.C. §1415(k) at an expedited hearing.

24        Plaintiff made two new arguments in connection with section 1415(k) in his reply brief.

25

26   _____

27   [5] Plaintiff appears to make a related argument on reply; namely, that because J.M.'s termination
     was an expulsion, it amounted to a change in education placement.  Reply at 7-8.  Plaintiff cites a
     string of cases that stand for the proposition that an expulsion or suspension in excess of 10 days
28   constitutes a change in placement.  Reply at 7-8.  Critically, Plaintiff does not support his
     underlying assumption that Anova's termination of the ISA amounted to an expulsion.  *Id.*

United States District Court
Northern District of California

As a preliminary matter, the court will not consider arguments raised for the first time on reply. *See United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").  In addition, Plaintiff's first argument is undecipherable.  He claims that the expedited decision was premised on the ALJ accepting Anova's testimony that it terminated J.M.'s enrollment because Anova could no longer serve J.M.'s needs.  Reply at 12.  Plaintiff appears to try to rebut this testimony by stating: "No one noticed that both Miller Creek and Anova had to show IDs at the door to fully acknowledge and admit they were making a decision to 'change the placement of a child with a disability' from the onset of their decision to expel JM . . . [H]aving entered the arena to 'change the placement of a child with a disability' regardless of reason, Miller Creek's press credentials got entry to the process by agreeing to 'change the placement' of JM." *Id.*  The court is unable to follow, much less address Plaintiff's garbled presentation, made inappropriately on reply.

Plaintiff next claims that the ALJ showed "demonstrable bias highlighting his total deference to Adler's testimony and complete disregard of SML's competing and contrary testimony[.]"  Reply at 13.  He repeated this argument at the hearing, explaining that the ALJ abused his discretion by disregarding Plaintiff's mother's testimony and crediting Anova's witness.  Plaintiff contends that the ALJ's statement that the "[s]tudent offered no credible evidence that contradicted Adler's opinions" was "per se erroneous" because "[i]t was not plaintiff's role to 'contradict' or even challenge Adler's 'opinions.'" *Id.*  Again, "[l]egal issues raised for the first time in reply briefs are waived." *United States v. Rozet*, 183 F.R.D. 662, 667 (N.D. Cal. 1998) (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) and *Dilley v. Gunn*, 64 F.3d 1365, 1367 (9th Cir. 1995)).  In addition, Plaintiff is mistaken on the law.  As the moving party in the administrative proceedings, Plaintiff carries the burden of persuasion by a preponderance of the evidence. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *see also* A.R. at 504.

Plaintiff has provided no other grounds to overturn OAH's expedited decision. Accordingly, Plaintiff has not satisfied his burden to prove that the decision should be reversed.

United States District Court
Northern District of California

1   *See J.W.*, 626 F.3d at 443 (9th Cir. 2010).

2   **B.    The Non-Expedited Decision**

3   At issue in the non-expedited decision was whether the District denied J.M. a FAPE when

4   it removed him from Anova without S.M.L.'s permission and without an IEP meeting prior to a

5   change of placement.  A.R. 979.  The ALJ found that the District did not deny J.M. a FAPE under

6   the circumstances.  *Id.* at 986.

7   Plaintiff's opening brief makes no argument in connection with the District's obligations to

8   provide a FAPE.  As previously explained, his motion focuses nearly exclusively on whether

9   Anova's termination of J.M.'s enrollment was unlawful under Education Code § 56366.  As

10   described above, the court now understands that Plaintiff seeks to challenge the ALJ's decision not

11   to determine the constitutionality or statutory interpretation of Education Code § 56366 in the non-

12   expedited proceeding.

13   Plaintiff's argument is not persuasive.  On August 8, 2022, the parties held a prehearing

14   conference before ALJ Krikorian.  A.R. at 995-1031.  During the conference, the parties discussed

15   at length the issue to be presented at the underlying non-expedited hearing.  ALJ Krikorian

16   acknowledged Plaintiff's counsel's position that "the whole process of the [contract] termination

17   itself is either wrong or unconstitutional" but noted that he only had jurisdiction over the issue of

18   FAPE.  *Id.* at 1001.  He explained that he could not rule on Education Code § 56366, *id.* at 1001,

19   1017 ("I don't think I have jurisdiction to determine whether the statute is legal or illegal or

20   unconstitutional"), and could only determine whether, as the District applied the statute, it denied

21   J.M. a FAPE.  *Id.* at 1017.  As in the non-expedited prehearing conference, Plaintiff agreed to

22   proceed this way.  He stated: "[I]f you could say [the statute] was properly applied, I'm satisfied

23   with that because that's really what I'm arguing."  *Id.* (cleaned up).  Accordingly, the only issue

24   before ALJ Krikorian at the non-expedited hearing was whether the District denied J.M. a FAPE

25   by removing him from Anova without his parent's permission and without an IEP meeting prior to

26   the change of placement.  A.R. at 979.

27   As discussed, Plaintiff does not provide any authority allowing an ALJ to modify the issue

28   Plaintiff himself agreed to.  In any event, Plaintiff fails to offer any statute, regulation or case

United States District Court
Northern District of California

12

1   requiring or even permitting the ALJ to determine the constitutionality or statutory interpretation

2   of Education Code § 56366(a)(4) in the administrative proceedings before him.

3          On reply, Plaintiff contends for the first time that the non-expedited hearing and decision

4   "manifested more ALJ bias, legal error, and abuse of discretion."  Reply at 13.  In support, he

5   explains that the ALJ interfered in Plaintiff's counsel's cross-examination of Rosenblatt.  *Id.*

6   Plaintiff asserts that the ALJ "shut off" counsel's cross-examination as he was about to "shred her

7   testimony on the illogical . . . argument that 'NPS' . . . placements, [i.e.] from one NPS to another

8   NPS, could be done at ease without any consideration of the distance between the two, and [that]

9   the move would constitute only a 'change in location[.]'"  *Id.* at 4.  Plaintiff contends that the ALJ

10  stopped counsel's questioning and "coached" Rosenblatt to the "'correct' response[.]"  *Id.*  He

11  claims that whether J.M.'s transfer from one NPS to another constituted a "change of placement"

12  or a "change of location" constituted the "entirety" of the dispute before the ALJ.  *Id.*  According

13  to Plaintiff, that question is "foreclosed as a matter of law."  *Id.*

14         Again, the court need not consider this argument raised for the first time on reply.  *Zamani*

15  *v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th

16  Cir. 2003)).  Further, Plaintiff cites a single case in support of his argument that J.M.'s potential

17  transfer to Irene M. Hunt School (another NPS) constituted a "change of placement" – *Rachel H.*

18  *v. Dep't of Educ. Hawaii*, 868 F.3d 1085 (9th Cir. 2017).  That case undermines Plaintiff's

19  position because it stands for the unremarkable proposition that "the term 'placement' means the

20  'general educational program of the student'" – not the physical location of the student.  *See*

21  *Rachel H.*, 868 F.3d at 1091 (quoting *N.D. ex rel. parents acting as guardians ad litem v. Hawaii*

22  *Dep't of Educ.*, 600 F.3d 1104, 1116 (9th Cir. 2010)).  Indeed, the Ninth Circuit has held that a

23  change of placement "relates to whether the student is moved from one type of program—i.e.,

24  regular class—to another type—i.e., home instruction" or occurs "when there is a significant

25  change in the student's program even if the student remains in the same setting."  *Id.*

26         Here, there was no change in J.M.'s educational placement because the District timely

27  identified an alternative NPS for J.M. – the Irene M. Hunt School – after Anova terminated its

28  contract with the District.  In other words, Plaintiff "stay[ed] in the same classification, same

1  school district, and same educational program." *N.D.*, 600 F.3d at 1116; *see also Gore v. D.C.*, 67

2  F. Supp. 3d 147, 153 (D.D.C. 2014) ("Courts addressing the question have overwhelmingly

3  determined that a change in location of services, on its own, is not a fundamental change in the

4  educational program and therefore, not a change in education placement under the IDEA")

5  (collecting cases). While Plaintiff reiterated this argument at the October 12, 2023 hearing, he did

6  not provide any additional case law to support his position.

7          In sum, Plaintiff did not meet his burden of proving the ALJ's decision was incorrect.

8          **C.      Equal Protection Challenge**

9          In the alternative, although not pleaded as a formal claim in the FAC, Plaintiff appears to

10  raise an "equal protection" challenge under both the Equal Protection Clause of the Fourteenth

11  Amendment and the IDEA. *See* Mot. at 18. Plaintiff's argument is difficult to follow. As best as

12  the court can tell, he contends that the District violated J.M.'s constitutional rights when it denied

13  him a FAPE and due process protections "merely because they assigned him to [Anova] instead of

14  a public school under their direct control." *Id.*

15          This claim lacks merit. The single case cited by Plaintiff, *City of Cleburne, Tex. v.*

16  *Cleburne Living Ctr.*, 473 U.S. 432 (1985), involved discrimination against individuals with

17  disabilities. It did not analyze a constitutional challenge in the context of the placement of a

18  student in an NPS instead of a public school. Plaintiff does not offer any other explanation,

19  evidence, or legal support for this legal theory, nor does he explain how the theory is connected to

20  this court's review of the IDEA appeal.

21          For these reasons, Plaintiff's constitutional argument is not persuasive.

22  **IV.    CONCLUSION**

23          For the foregoing reasons, Plaintiff's partial motion for summary judgment is denied, and

24  summary judgment on Plaintiff's second and third claims under the IDEA is entered in favor of

25  the District. As the court has adjudicated the only federal claims over which it has original

26  jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state law

27  claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental

28  jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has

United States District Court
Northern District of California

original jurisdiction.").  The Clerk is ordered to close the case.

**IT IS SO ORDERED.**

Dated: November 22, 2023

_____
Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California